# COURTESY CAB COMPANY and C. B. McCarter v. ELWANDA KECK.—440 S.W.2d 610.

Eastern Section. October 9, 1968.

Rehearing Denied November 15, 1968.

Certiorari Denied by Supreme Court April 7, 1969.

310

Poore, Cox, Baker, McAuley, Ray & Byrne, Louis Hofferbert, Knoxville, for plaintiffs in error, Courtesy Cab Co. and C. B. McCarter.

David D. Creekmore, Knoxville, for defendant in error, Elwanda Keck.

COOPER, J. This suit was brought by Elwanda Keck against C. B. McCarter, doing business as the Courtesy Cab Company, in an effort to recover damages for personal injuries she sustained when the cab in which she was riding left the roadway and struck a power pole. Plaintiff also sought to recover punitive damages, charging that the driver of the cab was intoxicated at the time of the accident, and further that the defendant was

guilty of *gross* negligence in entrusting the cab to a driver the defendant knew, or should have known, was an unsafe driver with a record of many traffic violations.

On trial, the jury returned a verdict in favor of plaintiff, awarding her $4,000.00 compensatory damages and $2,000.00 punitive damages. The defendant has appealed insisting (1) there is no material evidence to support the verdict of the jury, and (2) that the trial court erred (a) in admitting evidence of prior traffic convictions of the cab-driver and (b) in refusing to grant a new trial on the ground of "surprise and newly-discovered evidence."

The accident occurred at the intersection of Broadway and Washington Pike in the City of Knoxville. Broadway, the street on which the cab was travelling just prior to the accident, is a 4-lane main-thoroughfare for traffic moving north and south in the City of Knoxville. Washington Pike makes a "T" intersection with Broadway, entering Broadway from the west.

At the time the accident occurred, according to Mrs. Keck, she was a "fare-paying" passenger being transported from her sister's home near the wreck scene to her own home in Knoxville. Mrs. Keck testified that she noticed nothing unusual about the driver's physical condition at the time she entered the cab, nor did she notice anything unusual in the operation of the cab until it neared the accident scene. Mrs. Keck testified they approached the accident scene on Broadway and were travelling in a southerly direction; that she saw the lights of an automobile coming from the left and said, "I believe the car is going to hit us;" that the responsive actions of the cab-driver, the "wild like" way he grabbed the wheel, were such that she realized the driver was

intoxicated. Mrs. Keck, who suffered a head injury in the accident, remembered nothing more concerning the operation of the cab.

Sergeant Richard Scruggs, who investigated the accident, testified that he found Mrs. Keck and the cab-driver still in the cab when he arrived at the scene of the accident; that Mrs. Keck was obviously injured and the cab-driver was drunk. The officer further testified he found no physical evidence of the presence of any other automobile and there was no damage to the cab other than that caused by the cab striking and knocking down a concrete marker and a power pole. There were striations or light tire marks leading from the rear of the cab to the inside lane for traffic travelling south on Broadway, showing the cab made a "gentle" swerve from the inside lane across the outside lane and off the highway.

Felix Maupin, a police captain, was permitted to relate the traffic convictions of the cab-driver as reflected by the records of the City of Knoxville and also the convictions for public drunkenness.

The cab-driver, on taking the stand, denied being drunk at the time the accident occurred, denied that Mrs. Keck was a "fare-paying" passenger, and denied working as a cab-driver on the day the accident occurred. According to the driver, he did not go to work on his regular evening shift as he had been drinking, but left his cab parked at the cab stand on Depot Street; that he visited the home of friends who lived near Mrs. Keck and, later, Mrs. Keck came over; that, at Mrs. Keck's request, he agreed to drive her across Knoxville to a "bootleggers" to purchase whiskey; that Mrs. Keck then had her father and brother drive him and Mrs. Keck to the cab stand to pick up the cab; and that, thereafter, he drove Mrs. Keck to

the "bootleggers". According to the cab driver, the accident happened on the return trip and was caused by another automobile forcing the cab from the road.

The testimony of the other witnesses did not relate to the manner in which the accident occurred, but was offered to buttress or to attack, as the case might be, the testimony of the principals concerning the purpose of the plaintiff's trip in the cab. We see no need to "recap" this testimony as we do not weigh evidence or pass upon the credibility of witnesses on appeal. Our duty is to decide if there is any material evidence in the record to sustain the jury's verdict. In doing so, we are required "to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897.

█ In our opinion, when the above evidence is considered in this manner, it supports a conclusion by the jury that the plaintiff was a "fare-paying" passenger to whom the defendant owed "the highest degree of care consistent with the proper transaction of [his] business" [Wishone v. Yellow Cab Co., 20 Tenn.App. 229, 97 S.W.2d 452, 453]; that this duty was breached by the negligence of defendant's agent, the cab-driver, in operating the cab while in an intoxicated condition and in swerving the cab from the inside lane of the roadway through the outside lane and off the roadway, and that the negligence of the cab-driver was the proximate cause of the accident.

As noted above, the defendant insists that the trial court erred in admitting in evidence the cab-driver's recorded traffic convictions and his convictions for public

drunkenness. The defendant's objection to this evidence in the trial court was on the sole ground that the cab-driver was not a party to the suit.

We know of no case holding that an entrustee of an automobile must be a party to the suit before evidence of specific instances of the entrustee's recklessness or intoxication is admissible where the competency of the entrustee to operate the entrusted automobile is an issue under the pleadings, and know of no logical reason for such a limitation.

"[W]here recovery is predicated upon the negligence of the owner in entrusting his motor vehicle to a known incompetent driver, the courts have recognized the admissibility of evidence of specific instances of the recklessness, intoxication, or carelessness of the driver as tending to show his incompetency as a driver." 8 Am.Jur. 2d, Section 942, pages 487, 488. See also 120 A.L.R. 1313 and cases there cited, and compare Kennedy v. Crumley, 51 Tenn. App. 359, 367 S.W.2d 797, where this court recognized that evidence of convictions of traffic violations was admissible on the issue of incompetency of the entrustee, but that such evidence "standing alone, and which [has] no probative value to bring knowledge home to defendants, would not be admissible on the issue of whether the entruster knew or should have known of the incompetency of the entrustee."

In the final assignment of error of defendant, it is insisted that the trial court erred in refusing to grant a new trial on the ground of "surprise and newly discovered evidence." The newly discovered evidence consisted of affidavits of Mrs. Wanda Sue Bowman and Mrs. Betty Compton that plaintiff's sister, Mrs. James West,

did not reside at 1109 Buchanan Street or in that vicinity on the day the accident giving rise to his suit occurred. This evidence would be contradictory of the testimony of the plaintiff that she visited her sister on Acuff Street on the night of the accident.

 It is interesting to note that evidence to the same effect as that set forth in the affidavits was introduced by the defendant during the trial of this cause. In fact, one of the affiants, Mrs. Betty Compton, testified substantially in accord with her affidavit. We see no abuse of discretion on the part of the trial court in refusing to grant a new trial in this cause, where the evidence offered would be merely cumulative and of an impeaching character.

''The granting or refusing of a new trial on grounds of newly discovered evidence of a contradictory and impeaching character [is] within the sound discretion of the trial court * * *'' Vest v. Bitner, 34 Tenn.App. 575, 241 S.W.2d 438; Smith v. Steele, 44 Tenn.App. 238, 313 S.W.2d 495, 507.

The judgment of the trial court is affirmed. Costs are adjudged against the defendant and his surety.

McAmis, P. J., and Parrott, J., concur.

## Petition to Rehear

 Defendant C. B. McCarter, d/b/a Courtesy Cab Company, has filed a petition to rehear asking the basis of this court's affirmance of the award of punitive damages, it being Mr. McCarter's insistence that ''there is nothing in the record to support [such] an award.'' We cannot agree. As pointed out in the opinion filed in this cause, there was evidence from which the jury could find that the driver of the cab involved in the accident was

drinking intoxicating beverages prior to the time he was to report for work, and was intoxicated at the time the accident occurred. This evidence, in our opinion, was the basis of the Jury's award of punitive damages. Certainly, it was the basis of our affirmance of the award.

McAmis, P. J., and Parrott, J., concur.